*512 OPINION of the Court, by
Judge Logan.
Clinkmgbeard exhibited his bill in chancery for the recovery of certain land, to which he alleges the superior right, but for which the defendant holds the title at law.
The complainant claims under the following entries : “19th May, 1780, John Davis enters 490 acres upon a treasury warrant, adjoining a pre-emption of 400 acres claimed by said Davis, as assignee oi Benjamin Dunaway, and on the south and east side of said pre-emption, on the waters of Licking.”
“ 24th May, 1780, John Davis, assignee, &c. enters a pre-emption warrant, 400 acres, lying on the east side of a branch of Stoner’s fork, including the said Dunaway’s improvement.”
The entry with the surveyor in virtue of the preemption right being posterior to that on the common treasury warrant, which calls for, and is made to depend on the pre-emption ,- it becomes therefore proper to settle an important preliminary question to the decision of the treasury warrant claim ; whether the location contained in the certificate from the court of commissioners, mav be adverted to, in construing and ascertaining the true position of the treasury warrant entry ?
It has been repeatedly decided by this court, that the location in a certificate for pre-emption, not ap-pendant on a settlement right, cannot be taken in aid of the entry with the surveyor ⅜. because the law did not require that those certificates should be recorded with the surveyor, as it did of those for settlement rights; and that therefore the locator should not avail himself of additions and explanations contained in the certificate, which was not entered with thé surveyor. And because, moreover, the law has declared, that every person having a land warrant founded on anj? *513 irf die befarementioned rights, and being desirous of locating the same, &c. shall direct the location thereof so specially and precisely, as that others may be enabled with certainty to locate other warrants on the adjacent residuum which location the law required to be entered by the surveyor in a book for that purpose.
certificate” tm pre-emption cannot fli £he furveyor'-N'i" cord. M'Gbee. , ’’ p’
Entry, tying th' -®- -,⅛ stoner’T'ferkf including ⅛, Pr°v«nent.
dertof“¡ branch of Sto-ner> _ «⅝** ” sh” furvey’ feet. ; ei‘
This provision of the act embraced pre-emption warrants ; and therefore, it was indispensable that Io-cations on them should be made with the foregoing precision, and entered with the surveyor accordingly. Rut this would not have been the case, where, in order to that precision, the location is made to depend on other description than that contained in itself and recorded by the surveyor. If in short the location must be made with a given certainty, and has complied with that , requisition, then the aid of description from the certificate would be unnecessary. And if it does not contain that required precision when made on the warrant, it is a consequence equally certain, that it does not comply with the law.
But this provision in the law does not apply to certificates for settlement rights, because no warrant was required on them, and because they were to be ed of record in the surveyor’s office.
We have made these observations, in order to shew our views of the law in relation to the two description of claims founded on certificates ; and to lead to the distinction which will follow, between refering to certificates for the purpose of making that certain which without them would be uncertain, and which the law expressly declares shall, in the location itself founded on such warrant, contain the requisite specialty and precision ; and refering to those claims depending on certificates only for their specialty at the time being.
The law declares, that the court of commissioners should, in their certificates to those entitled to the right of pre-emption, “ specify the location of such land” And it contains a similar requisition with respect to those entitled to settlement rights.
Until the certificate of settlement had been entered wuh the surveyor, the two claims stood precisely on. she same ground, in furnishing information to subse- *514 quest locators of their local situation. They were equally matter of record in the same court, and similar locations required in each, and it is conceived from a view to the same end, to warn others, having warrants to locate, of their respective positions.
A location calling for a particular settlement, which had been granted with a location sufficiently special, although not entered with the surveyor, it is believed, has never been questioned on that ground. It has been otherwise ruled with regard to pre-emptions ap-pendant on settlements ; because they have been considered as a note or memorandum only of the quantity to which the claimant might obtain a warrant of pre-emption, and not as a location of land.
But the reason here given shews clearly that a different understanding was entertained with respect to settlements, because the law required them to be particularly located in the certificates. This gave them a fixed, local, and certain position, and might therefore inform others of their situation, and serve to adjoin with precision and certainty.
It remains now to inquire for a distinction either in law or reason, between locations of settlement rights, which have been given with legal precision in certificates, and those founded on pre-emptions for actual settlements■ If it depends on the law, both claims are made alike accessible, and to contain similar locations ; and therefore serve equally to warn others of their positions. If the former may be attached to an actual settlement, so is the latter required to be. But they should be viewed in the same light, because the law required a particular, or specific location in them, and they, with regard to locations made to depend on them, communicated the same sort of certainty and information, whereby others might be enabled to locate with certainty other warrants on the adjacent residuum.
It is therefore the opinion of this court, that a location with the commissioners containing legal precision, founded on a pre-emptive right for an actual, settlement, ought to be regarded in the construction of an entry depending on the same, before the entry on the pre-emption warrant had been made with the surveyor. .■
*515 This loads to an examination of the location con» tairied iri the certificate, which had been granted for a pre-emption of 400 acres to Benjamin Dunnaway, and is as follows: “December 29th, 1779, Benjamin Dunnaway this day claimed a pre-emption of 400 acres of land at the state price in the district of Kentucky, lying on a small branch of Stoner’s fork, a branch of Licking creek, on the east side of the said fork, including his improvement, by making an actual settlement, April 1779. Satisfactory proof being made to the court, they are of opinion, that the said Dunna-way has a right to a pre-emption of 400 acres of land to include the said settlement. Certificate not to issue until the further order of the court — Certificate issued for 400 by order of court at Bryant’s..”
By law the power of the commissioners had terminated before the date of the entry in question ; so that the certificate must have been granted before the entry was made.
It was contended in argument, that the entry on the treasury warrant is invalid, because of the incorrect description of the claim it calls to adjoin. It cells to adjoin a pre-emption of 400 acres claimed by said Davis as assignee of Benjamin Dunnaway, when in fact no such claim had been entered in the name of Davis as assignee of Dunnaway.
Dunnaway by law could have but one pre-emption in his own right. Therefore, the call to adjoin his preemption of 400 acres, though represented to have been claimed by Davis as his assignee, had an unequivocal reference to that claim only. And there being no entry of it with the surveyor, it was proper to refer to the location in the certificate for the reasons already given ; although we are aware of much inconvenience to which a locator might thereby have been subjected. But this inconvenience was enjoined on him at his peril with regard to the pre-emption right itself; because the subsequent entry ón thé pre-emption warrant conformable to the location in the certificate, would relate back to it, and swailow up intermediate entries conflicting therewith. But if the location in the certificate does not contain the requisite prerj-«ion, the pre-emptive dignity would be lost. And he: ■ it may be asked why should it be lost ? The aoswt - *516 is, because it did not point out with sufficient certain* ty the ground it occupied, so as to inform other locators how to avoid it. But it they were not bound to notice the claim anterior to its entry with the survey- or, then surely an identity of its calls would answer as well as the most unquestionable general notoriety, to preserve its pre-emptive dignity. This, it is believed, cannot be the true meaning of the law.
If then a subsequent locator roust at his peril have regarded the location in a certificate which had been granted by the commissioners, and if the description in the treasury warrant entry refers with sufficient certainty to the claim, intended ; the next enquiry is, whether the location in the certificate was a good location ?
The call for Stoner’s fork of Licking answered as a general description of that section of the country covered by those waters. But in proportion as this general description was vague, so much the more ought the notoriety of the improvement to have been extended.
But the improvement is represented to have been an actual settlement, made in April, 1779. Andjit has been decided, and we think correctly, that an actual settlement about that period, implied notoriety. Regarding then an actual settlement as prima facte evidence of notoriety, and the next enquiry is, whether there is any evidence in the cause which repels that presumption ? Upon making this examination, we find the evidence to fortify the presumption of notoriety. Indeed the defendant himself seemed to rely on the point touching the notoriety of the improvement, whether a stranger at Boonsborougli, or Strode’s station, could ha,ve found the improvement from the description given in the location ; and although the witnesses to that inquiry answer in the negative, yet they generally reply, that a stiangei might have received such information at those places from others as would enabled him to have Sound said improvement. Butjtis sufficient that the; improvement was notorious among those mostly conversant in that part of the country ; for if so, the presumption is, that a person about t.o locate that land, could with reasonable diligence have, possessed himself of the pre- *517 per information to have guarded him against an interference with said claim.
With respect to the position which this location would give the pre-emption, we are of opinion that the marked trees, some distance from where the corn, &c. were raised, cannot be properly considered as constituting a part of the improvement intended, inasmuch as the actual settlement formed the foundation and essence of the claim; that therefore the field, or corn and pumpkin patch, should be regarded only in giving figure and location to the claim; and this, according to the uniform opinions of this court, is in a square to the cardinal points, including said place in the centre.
The entry on the treasury warrant should then be laid down to adjoin it on the south and east sides m one survey with lines equidistant therefrom, extended from the northeast and southwest corners, east and south so far as to include the quantity of 400 acres.
The next claim for our examination, is, the entry of pre-emption with the surveyor; in the construction of which, the location with the commisioners cannot be brought in aid thereof. But there is no call in the entry with the surveyor, which can produce any change in the position given by the location with the commissioners, except the call to lie “ on the east side of a branch of Stoner’s fork.”
The small branch represented near the improvement, we are of opinion is not the one referred to in the entry, because it is proven to have been no branch, but a grassy hollow, at an early period, or before the settlement and farther improvement of the country, except a short distance from the spring to its mouth ; and because it is not properly a branch of Stoner, as it discharges itself first into another brunch of Stoner. Nor can this latter be the branch intended, because the improvement is on the westwardly side of it. But another branch is delineated in the plat by the figures 5, S, which is west of the improvement. This is the only branch we can conceive could have been intended within the description of the entry. On the east side of which we are therefore of opinion the entry ought to be confined.
From the contiguity of this branch to the improvement, it seems to the court that the branch should be *518 made the base of tbe claim, and that the survey should be extended a|. right angles from so much of the gene. ral (a) course of the branch as will he covered by 400 acres, running the southern and northern boundaries ser-as to include the improvement aforesaid in the centre (b) between them.
Cíikxíng-beard Kenny.
With regard to. the appellee's claim- it need only be °bserved, that he relied on his elder patent. Where-lore it is ordered and decreed, that the decree of the circuit court dismissing the complainant’s bill be rc-versecj anc[ tbat tbe cause be remanded to said court» that a decree may be entered agreeable to. the forgoing opinion, for the land which lies within the claims as herein directed to be laid down, and which is inda-ded in the surveys as made. — Costs are decreed..

 Craig vs. Hawkins vol p. 55.

 Pr. Dec. 52 3-Bradford vs. M’Cracken, Morgan, vs. Robinson, Pr. Dec. 269.